**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

MATTHEW JOHN MATAGRANO,

                              Plaintiff,                    9:19-cv-763 (BKS/DJS)

v.

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY SUPERVISION,
CENTRAL NEW YORK PSYCHIATRIC CENTER, and
NEW YORK STATE OFFICE OF MENTAL HEALTH,

                              Defendants.

_____

**Appearances:**

_For Plaintiff:_
Amy Jane Agnew
Joshua L. Morrison
Law Office of Amy Jane Agnew, P.C.
24 Fifth Avenue, Suite 1701
New York, NY 10011

_For Defendants:_
Letitia James
Attorney General of the State of New York
Adrienne J. Kerwin
Lela M. Gray
Assistant Attorneys General, of Counsel
The Capitol
Albany, NY 12224

**Hon. Brenda K. Sannes, Chief United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

## I.    BACKGROUND

Plaintiff Matthew John Matagrano, originally proceeding _pro se_, filed this action

pursuant to 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101,

et seq. ("ADA"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, (Dkt. No.

1), along with an application to proceed *in forma pauperis* ("IFP"). (Dkt. No. 2). The Court granted Plaintiff IFP status and found certain of Plaintiff's claims sufficient to survive review pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). (Dkt. No. 4). Plaintiff then filed an amended complaint, (Dkt. No. 9), and the following claims survived initial review: (1) ADA and Rehabilitation Act claims against Defendants Department of Corrections and Community Supervision ("DOCCS"), Central New York Psychiatric Center ("CNYPC"), and New York State Office of Mental Health ("OMH"); (2) First Amendment retaliation claims against Defendants Stewart T. Eckert, Betty Jo Gabel, Ellena Marrone, Jacqueline Levitt, M.D., and B. McDonald; and (3) Eighth Amendment medical indifference claims against Defendants Eckert, Gabel, Marrone, Levitt, McDonald, and Margaret Stirk, (Dkt. No. 16).

Plaintiff, now represented by counsel, (*see* Dkt. No. 14), moved to again amend the complaint, (Dkt. No. 30), a request the Court granted, (Dkt. No. 48). The second amended complaint eliminated the First Amendment retaliation claims as against Defendants Eckert and Levitt. (*See* Dkt. No. 49, at 30–31). Plaintiff also voluntarily dismissed all claims against Defendants Gabel, McDonald, Stirk, and Marrone. (Dkt. Nos. 43, 44). Upon considering Defendant's cross-motion for partial summary judgment, the Court dismissed Plaintiff's Eighth Amendment claims against Defendants Eckert and Levitt for failure to exhaust administrative remedies. (Dkt. No. 48). Later in the litigation, Plaintiff voluntarily dismissed his ADA and Rehabilitation Act claims regarding: (1) Plaintiff's access to a TTY machine at Wende Correctional Facility ("Wende") and CNYPC, and (2) Plaintiff's hearing aids or access to batteries for hearing aids. (Dkt. No. 99, at 1). The Court, then considering Defendant's motion for summary judgment and Plaintiff's cross-motion for partial summary judgment, also dismissed: (1) Plaintiff's remaining ADA claims and (2) his Rehabilitation Act claims based on

the closure of the Wende Resource Room and the failure to accommodate Plaintiff with a pocket talker in September 2019 at Wende. (*See* Dkt. No. 115, at 27–38). Finding issues of fact, the Court allowed Plaintiff's Rehabilitation Act claims based on the alleged ban of American Sign Language ("ASL") in the Wende mess hall and the failure to reasonably accommodate Plaintiff at CNYPC to survive summary judgment. (*See id.* at 19–27, 38). A jury trial was scheduled to commence as to these two claims on February 26, 2024. (Dkt. No. 134). Plaintiff notified the Court on January 31, 2024, that he had received an Offer of Judgment pursuant to Federal Rule of Civil Procedure 68 (the "Rule 68 Offer") from Defendants. (Dkt. No. 141). Plaintiff filed a notice of acceptance, (Dkt. No. 143), and judgment was "entered against Defendants in the amount of $3.00, exclusive of allowable costs and disbursements and reasonable attorney's fees to be determined by the Court." (Dkt. No. 144).

Presently before the Court is Plaintiff's motion for attorneys' fees and costs. (Dkt. No. 146). Plaintiff seeks a total of $85,450.66[1]: $73,425 in attorneys' fees, constituting a fifty percent reduction in the calculated lodestar figure ($146,850), and $12,025.66 in costs. (Dkt. No. 147, at 18–22). Defendants oppose awarding Plaintiff any attorneys' fees or costs and ask that if the Court decides to award them that the amount be further reduced. (Dkt. No. 148). The motion has been fully briefed. (*See* Dkt. Nos. 146–48, 151). For the reasons that follow, Plaintiff's motion for attorneys' fees and costs is granted in part and denied in part.

---

[1] Elsewhere in Plaintiff's brief, he appears to suggest that the lodestar is actually $158,905 and that he seeks $79,452.50 in total. (Dkt. No. 147, at 9). This appears to represent a fifty percent reduction of the attorneys' fees and costs added together, rather than a fifty percent reduction of attorneys' fees plus costs. (*See* Dkt. No. 146-1, ¶¶ 48, 50–52). This calculation is inconsistent with the rest of Plaintiff's briefing. (*See generally* Dkt. Nos. 147, 151).

## II.    DISCUSSION

### A.    Attorneys' Fees

#### 1.    Entitlement to Fees

##### a.    Rule 68 Offer

Plaintiff argues that he is entitled to reasonable attorneys' fees and costs in accord with the terms of the Rule 68 Offer. (Dkt. No. 147, at 9–11). Defendants oppose awarding Plaintiff's fees, but do not directly address Plaintiff's argument regarding the language of the Rule 68 Offer. (*See* Dkt. No. 148-13, at 6–9).

"Whether a Rule 68 judgment encompasses claims for attorneys' fees authorized to prevailing parties by statute or contract depends on the terms of the accepted offer." *Steiner v. Lewmar, Inc.*, 816 F.3d 26, 31 (2d Cir. 2016). "Offers of judgment pursuant to Fed. R. Civ. P. 68 are construed according to ordinary contract principles." *Goodheart Clothing Co., Inc. v. Laura Goodman Enterprises, Inc.*, 962 F.2d 268, 272 (2d Cir. 1992) (collecting cases). "[W]here the language of the contract [*i.e.*, the Rule 68 offer and acceptance thereof] is clear and unambiguous, the contract is to be given effect according to its terms." *Steiner*, 816 F.3d at 31 (quoting *Lee v. BSB Greenwich Mortg. Ltd. P'ship*, 267 F.3d 172, 178 (2d Cir. 2001)). "A contract is ambiguous if it is 'reasonably susceptible of more than one interpretation,' and unambiguous if it has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Id.* at 32 (quoting *Goodheart Clothing*, 962 F.2d at 272).

Here, the Rule 68 Offer stated the following:

> Pursuant to Fed. R. Civ. P. 68, Defendants, by their undersigned counsel, hereby offer to allow judgment to be taken against them on Count Four of Plaintiff's Second Amended Complaint, ECF No. 49, the only cause of action remaining in this case, for the total sum of $3.00, *exclusive of allowable costs and disbursements and*

> *reasonable attorney's fees accrued to date, if any, to be determined*
> *by the Court.*

(Dkt. No. 143-1, at 2 (emphasis added)). While Plaintiff argues that "the Court *must* award all

reasonable costs and attorneys' fees to Plaintiff incurred in this case up to the date of the

Defendants' tendering the Rule 68 offer," (Dkt. No. 147, at 11 (emphasis added)), this is not how

the Court understands the plain language of the contract. The Court finds that the Rule 68 Offer

unambiguously *excludes* reasonable attorneys' fees from the judgment, but reserves

determination of reasonable attorney's fees and costs to the Court. *See Goodheart Clothing*, 962

F.2d at 271–73 (finding that in Rule 68 offer stating "defendants by their undersigned counsel

hereby offer to allow judgment to be taken against them in the amount of One Thousand Dollars

($1,000.00) exclusive of costs and attorneys fees, if any, awarded by the Court," "the words 'if

any' were expressly intended to reserve the attorney fee issue").

### b.    29 U.S.C. § 794a(b)

Plaintiff states that even if the Court does not award fees pursuant to the terms of the

Rule 68 Offer, he "still should be awarded reasonable fees and costs" pursuant to 29 U.S.C. §

794a(b). (Dkt. No. 147, at 11–13). Defendant argues that Plaintiff, who only received nominal

damages, should not be awarded attorneys' fees under the logic of Justice Sandra Day

O'Connor's concurrence in *Farrar v. Hobby*, 506 U.S. 103 (1992). (Dkt. No. 148-13, at 6–9).

29 U.S.C. § 794a(b), a fee-shifting provision under the Rehabilitation Act, provides that

"[i]n any action or proceeding to enforce or charge a violation of a provision of this subchapter,

the court, in its discretion, may allow the prevailing party, other than the United States, a

reasonable attorney's fee as part of the costs." District courts are afforded "broad discretion in

awarding attorneys' fees." *Lilly v. City of N.Y.*, 934 F.3d 222, 234 (2d Cir. 2019). Citing *Farrar*

and *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the Second Circuit in *Pino v. Locascio* has

explained that:

> Determining whether an award of attorney's fees is appropriate
> requires a two-step inquiry. First, the party must be a "prevailing
> party" in order to recover. If [he] is, then the requested fee must also
> be reasonable. The most important factor in determining the
> reasonableness of a fee is the degree of success obtained.

101 F.3d 235, 237 (2d Cir. 1996) (internal citations omitted).

"Courts presumptively use the 'lodestar' approach to arrive at a reasonable fee . . .

[n]ominal damage awards, however, receive special treatment." *Monsour v. N.Y. State Off. for*

*People with Developmental Disabilities*, No. 13-cv-336, 2018 WL 3349233, at *13, 2018 U.S.

Dist. LEXIS 113041, at *36–37 (N.D.N.Y. July 9, 2018) (internal citation omitted). The

Supreme Court has explained that "[i]n some circumstances, even a plaintiff who formally

'prevails' . . . should receive no attorney's fees at all. A plaintiff who seeks compensatory

damages but receives no more than nominal damages is often such a prevailing party." *Farrar*,

506 U.S. at 115. In *Pino*, the Second Circuit stated that "while there is no *per se* rule that a

plaintiff recovering nominal damages can never get a fee award, *Farrar* indicates that the award

of fees in such a case will be rare." 101 F.3d at 238 (citing *Farrar*, 506 U.S. at 115).[2]

In considering whether attorneys' fees should nevertheless be awarded when a plaintiff

has obtained nominal damages, a court considers "the difference between the amount awarded

and the amount sought." *See Monsour*, 2018 WL 3349233, at *15, 2018 U.S. Dist. LEXIS

113041, at *41; *Pino*, 101 F.3d at 238 (finding it significant that the plaintiff "sought over $21

---

[2] Plaintiff contends that *Farrar* "does not apply" in this instance, arguing that its reasoning is limited to cases where a party has failed to prove an essential element of his or her claim. (*See* Dkt. No. 151, at 7, 9 ("The operative language from *Farrar* is 'when a plaintiff recovers only nominal damages on account of their failure to prove an essential element of their claim for monetary relief, the only reasonable fee is no fee at all.'" (quoting *Farrar*, 506 U.S. at 115)). Plaintiff does not cite any case law suggesting that the *Farrar* line of cases is so cabined.

million in compensatory and punitive damages," but "received only $1.00 in damages"); *Farrar*, 506 U.S. at 121 ("[A] substantial difference between the judgment recovered and the recovery sought suggests that the victory is in fact purely technical.") (O'Connor, J., concurring)). A court will also consider whether the decision "'result[ed] in groundbreaking conclusions of law' or yielded 'other meaningful relief.'" *Monsour*, 2018 WL 3349233, at *15, 2018 U.S. Dist. LEXIS 113041, at *42 (quoting *Pino*, 101 F.3d at 239).

Here, there is no dispute that Plaintiff is the prevailing party. (*See* Dkt. No. 147, at 12; Dkt. No. 148-13, at 6–9). With respect to the reasonableness of the fee, the analysis is more complicated. While the operative complaint sought compensatory damages against DOCCS, CNYPC, and OMH, (Dkt. No. 49, at 35), during the litigation the Supreme Court limited the ability of plaintiffs to obtain damages for emotional distress under certain statutes enacted pursuant to the Spending Clause, including the Rehabilitation Act, in *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022). Consequently, by the time Plaintiff's remaining claims were trial ready, Plaintiff could only seek—and, indeed, only sought—nominal damages for his Rehabilitation Act claims. (*See* Dkt. No. 117, at 1). Thus, Plaintiff received exactly what he ultimately sought—an award of nominal damages against all three remaining Defendants. (*See* Dkt. No. 144). Courts in this Circuit have awarded attorneys' fees under these circumstances. *See Diamond v. O'Connor*, No. 5-cv-279, 2010 WL 9459022, at *2, 2010 U.S. Dist. LEXIS 144731, at *4–5 (D. Vt. June 10, 2010) (awarding attorneys' fees where the plaintiff "stated at trial that he sought only nominal damages for" the violation of his Fourth Amendment rights), *aff'd* 417 Fed. App'x 104 (2d Cir. 2011); *West v. DOCCS*, No. 5-cv-447, 2018 WL 2901330, at *2–3, 2018 U.S. Dist. LEXIS 98495, at *4–6 (W.D.N.Y. June 12, 2018) (awarding attorneys' fees where the plaintiff "accepted a judgment against DOCCS entitling him to

nominal damages.").[3] Accordingly, the Court finds that an award of attorneys' fees is appropriate and therefore must determine what constitutes a reasonable fee under these circumstances.

### 2.    Reasonable Fees

As indicated above, district courts have "considerable discretion in determining what constitutes reasonable attorney's fees in a given case," *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008), and courts in the Second Circuit generally use the lodestar, or "presumptively reasonable fee," approach to calculate reasonable attorneys' fees, *see Lilly*, 934 F.3d at 229. This approach requires a district court to set a "reasonable hourly rate, taking account of all case-specific variables," and determine "the appropriate billable hours expended." *Lilly*, 934 F.3d at 230 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 189–90 (2d Cir. 2008)); *see also Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) ("Under this approach, the number of hours reasonably expended on the litigation is multiplied by a reasonable hourly rate for attorneys and paraprofessionals."). "The reasonable hourly rate should be what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Bergerson v. N.Y. State Off. of Mental Health*, 652 F.3d 277, 289–90 (2d Cir. 2011) (citation and internal quotation marks omitted). "[T]he district court . . . bears the burden of disciplining the market, stepping into the shoes of the reasonable, paying client,

---

[3] This case is distinguishable from *Diamond* where the court identified other reasons for its decision to award attorneys' fees, including that "[t]he judgment . . . alerts the City that [the defendant] and other officers may require additional training and supervision to prevent violations of Constitutional rights." *See* 2010 WL 9459022, at *2, 2010 U.S. Dist. LEXIS 144731, at *4–5 (citation omitted). However, the court in *West* specifically noted "unlike in *Diamond*, this matter arguably has not caused systemic changes or served a significant public purpose," and still chose to award attorneys' fees. 2018 WL 2901330, at *2 n.5, 2018 U.S. Dist. LEXIS 98495, at *6 n.5. As such, the Court does not find that the distinguishing features of *Diamond* suggest preclusion of an award here.

who wishes to pay the least amount necessary to litigate the case effectively." *Arbor Hill*, 522

F.3d at 184.

### a.    Reasonable Hourly Rates

Plaintiff has requested that Attorneys Amy Jane Agnew and Joshua Morrison be

compensated at $350 per hour and $300 per hour respectively and that the "Law Student Clerks,

Litigation Assistants, and Paralegals" should be compensated at $90 per hour. (Dkt. No. 147, at

14–15, 18–19). Defendants characterize these rates as "excessive" and argue that, at most,

Attorneys Agnew and Morrison's rates should be $250 and $200, respectively. (Dkt. No. 148-13,

at 13–16). Regarding the non-attorney work, Defendants argue that insufficient information is

provided on the support staff members' experience and qualifications, that most of the work is

clerical and thus non-compensable, and, with respect to the law student clerks, that "[t]o the

extent that any . . . work of the law student clerks is compensated, it should be billed at a

'reasonable paralegal rate' and not the top paralegal rate in this district." (*Id.* at 17–19 (citation

omitted)).

The Supreme Court has explained that district courts should generally use the "prevailing

market rates in the relevant community" in determining the reasonable hourly rate. *See Blum v.

Stenson*, 465 U.S. 886, 895 (1984). The Second Circuit has interpreted the "community" to mean

"the district where the district court sits." *See Arbor Hill*, 522 F.3d at 190 (citing *Polk v. N.Y.

State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)); *see also Grant v. Syracuse*, 357 F.

Supp. 3d 180, 200–01 (N.D.N.Y. 2019). A review of cases in this District indicates that the

following hourly rates (or rate ranges) are reasonable: $250–$350 for partners;[4] $165–$200 for

---

[4] *See Sadowski v. Urbanspotlite LLC*, No. 22-cv-887, 2023 WL 2838376, at *6, 2023 U.S. Dist. LEXIS 61259, at *15 (N.D.N.Y. Apr. 7, 2023); *see also Grant v. Lockett*, 605 F. Supp. 3d 399, 404 (N.D.N.Y. 2022).

associates;[5] and \$80–\$90 for paralegals, legal assistants, and other paraprofessionals.[6] "A law student's time is compensable in an award of attorney fees at the same rate as a paralegal." *Williams v. N.Y.C. Housing Auth.*, 975 F. Supp. 317, 326 (S.D.N.Y. 1997) (citations omitted). Additionally, "[o]nce the typical hourly rate is established, the court should 'bear in mind *all* of the case-specific variables that . . . courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate,'" including "(1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill level required by the case; (4) the preclusion of employment with other clients due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the extent of involvement in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Grant*, 605 F. Supp. 3d at 405 (quoting *Arbor Hill*, 522 F.3d at 186 n.3, 190).

### i.    Amy Jane Agnew

Amy Jane Agnew is the principal of the Law Office of Amy Jane Agnew, P.C. (the "Firm") (Dkt. No. 146-1, ¶ 16). She graduated from law school in 2011 and was admitted to the New York State Bar in 2013 and the New Jersey Bar in 2015. (*Id.*). Since 2015, her practice "has almost exclusively been in civil and disability rights in federal courts." (*Id.* ¶ 17). She has "tried over 20 federal and state bench and jury trials, as well as multiple evidentiary hearings" and

---

[5] *See Sadowski*, 2023 WL 2838376, at *6, 2023 U.S. Dist. LEXIS 61259, at *15; *see also Grant*, 605 F. Supp. 3d at 404.

[6] *See Sadowski*, 2023 WL 2838376, at *6, 2023 U.S. Dist. LEXIS 61259, at *15; *see also Grant*, 605 F. Supp. 3d at 404.

"ha[s] been appointed to serve as Class Counsel on several occasions and frequently co-counsel with other firms on impact litigation." (*Id.* ¶ 18).

Plaintiff has requested a rate of $350 an hour for Attorney Agnew's services. (Dkt. No. 147, at 14–15). Defendants argue that based on Attorney Agnew's years of experience, this rate is too high and should be set at $250. (Dkt. No. 148-13, at 15–16). However, the Court will also consider additional relevant[7] factors. Plaintiff has argued that Attorney Agnew "has a proven commitment to prisoner rights cases, extensive experience in this area of law, and a history of impactful successes in both class action and individual plaintiff suits." (Dkt. No. 151, at 13–14). Attorney Agnew's affidavit states that she "started taking prisoner rights cases through the Rutgers Constitutional Rights Clinic" in 2015, (Dkt. No. 146, ¶ 16), that she has conducted "other work with prisoners in DOCCS' Units for the Sensorially Disabled," (*id.* ¶ 4), that her practice since 2015 "has almost exclusively been in civil and disability rights in federal courts," (*id.* ¶ 17), and that she has tried over twenty jury trials, (*id.* ¶ 18). Taking all these factors into consideration, the Court finds that an appropriate rate for Attorney Agnew in this case is $300 per hour.

### ii.    Joshua Morrison

Joshua Morrison is litigation counsel for the Firm. (Dkt. No. 146-1, ¶ 31). He graduated from law school in 2014 and was admitted to the Illinois Bar in 2014 and the New York State Bar in 2020. (*Id.* ¶ 32). Attorney Morrison "has been practicing law in [p]laintiff-side civil rights cases since 2014" and prior to moving to New York, he "appeared in over 30 federal civil rights cases and was trial counsel in three federal civil rights jury trials." (*Id.* ¶¶ 31–32). After joining

---

[7] The Court does not consider to be relevant the rate that the Southern District of New York has found reasonable for Attorney Agnew. (*See* Dkt. No. 146-1, ¶ 19).

the Firm in 2021, he "has filed appearances in over 75 civil rights matters throughout all four

federal districts of the Second Circuit" and "has been second chair for three civil rights

hearings/trials for [the] Firm and was lead trial counsel for two civil rights jury trials." (*Id.* ¶ 33).

Plaintiff has requested a rate of $300 per hour for Attorney Morrison. (Dkt. No. 147, at

15). Here too, Defendants object to Plaintiff's requested rate based on Attorney Morrison's years

of experience and contend that "the reasonable hourly rate for Attorney Morrison is no more than

$200." (Dkt. No. 148-13, at 16).[8] Considering all of the relevant factors, including Attorney

Morrison's plaintiff-side litigation experience along with his relatively recent addition to the

Firm and its emphasis on disability-rights cases, the Court finds that $250 is the appropriate rate.

### iii.    Support Staff

Attorney Agnew has stated that the Firm relies upon "support staff, including Law

Student clerks, undergraduate student clerks, and Litigation Assistants." (Dkt. No. 146-1, ¶ 10).

Law student clerks perform a "quasi-counsel role" "with heavy supervision and assistance from

[the Firm's] admitted attorneys." (*Id.* ¶ 14). These clerks "often travel to prisons to interview

clients/class members, correspond with clients, review transcripts, attend depositions, attend

court appearances, conduct legal research, conduct non-legal research such as in expert

backgrounds and review peer-reviewed materials, draft memos of law, conduct specialty

research for counsel, assist with the preparation of papers, drafting of pleadings, and, sometimes

defend depositions and take testimony." (*Id.*). Undergraduate student clerks "offer essential

clerical support . . . including preparing mass mailings for class members, sorting medical

records, data entry, preparing exhibits, and doing quality control checks on exhibits and other

---

[8] Defendants state that "[w]hile the experience of Attorneys Agnew and Morrison appear comparable, Plaintiff seeks a lower hourly rate for Attorney Morrison's work than for work done by Attorney Agnew. Therefore, Defendants do the same." (Dkt. No. 148-13, at 16 n.2).

papers." (*Id.* ¶ 12). Litigation assistants "review and process mail from clients, set up gate passes for counsel visits to prisoners, set up counsel calls with prisons, coordinate travel, coordinate depositions, prepare exhibits, perform data entry log and follow the development of the litigation, assist with coordinating process of service, format papers for filing, and communicate with our clients and their family members." (*Id.* ¶ 13).

Plaintiff requests a $90 per hour rate for the Firm's support staff, including law student clerks Marla Buitargo-Rincon, Paul Chukrallah, undergraduate clerk Kelly Goral,[9] and Litigation Assistants Ajoke Adetula, Christie Marsh, Sylvia Dovlatyan, Trudy Flood, Noel Fahey, Kathryn Haas, Geneva Montgomery, and Sydney Melendez. (Dkt. No. 147, at 18–19; *see also* Dkt. No. 146-1, ¶¶15, 22–23, 25–30, 34; Dkt. No. 146-4). Defendants object to this rate being applied to any clerical task performed, which will be addressed in the next section. (Dkt. No. 148-13, at 17–19). Otherwise, Defendants object to the rates: for Kelly Goral and Geneva Montgomery because Attorney Agnew's declaration lacked information on their qualifications or experience[10]; for Marla Buitargo-Rincon and Paul Chukrallah because Attorney Agnew's declaration does not state how long either worked for the Firm; and for Ajoke Adetula, Sylvia Doylatyan, Noel Fahey, Trudy Flood, Kathryn Haas, Christie March, and Sydney Melendez because "the information provided by Attorney Agnew about the amount of time each worked at the firm, and the qualifications of each, is sparse at best." (Dkt. No. 148-13, at 17–19).

---

[9] Attorney Agnew's declaration did not contain any information on Kelly Goral's experience. (*See generally* Dkt. No. 146-1). Defendants have stated that "[r]eview of Plaintiff's counsel's website reveals that Kelly Goral is a second or third year college student," (Dkt. No. 148-13, at 17), a description that Plaintiff does not contest, (*see* Dkt. No. 151, at 14 n.3).

[10] Defendants correctly note that information on Kelly Goral's qualifications was omitted from Attorney Agnew's declaration, (Dkt. No. 148-13, at 17), but incorrectly stated that information on Geneva Montgomery's qualifications and experience was also omitted, (*see id.*; *see also* Dkt. No. 146-1, ¶ 34). Geneva Montgomery is described as having come "to the Firm with over a decade of experience in paralegal support for torts litigation." (Dkt. No. 146-1, ¶ 34).

Lack of information regarding the qualifications and experience of attorneys and support staff can be an appropriate basis for reduction in their fees. *Custodio v. Am. Chain Link & Const., Inc.*, No. 8-cv-7148, 2014 WL 116147, at *2, 2014 U.S. Dist. LEXIS 3857, at *8–10 (S.D.N.Y. Jan. 13, 2014) (noting that Magistrate Judge's recommendation to reject "the application for fees of [particular] attorneys and paralegals because there was insufficient information regarding their qualifications and experience" was "proper" (citations omitted)); *1979 Family Trust Licensor, LLC v. Darji*, No. 19-cv-4389, 2020 WL 9596279, at *1, 2020 U.S. Dist. LEXIS 181014, at *3 (S.D.N.Y. Sept. 30, 2020) (finding "[a] reduction in the paralegals' hourly rate is . . . warranted because Plaintiffs did not provide 'the qualifications of the paralegals' who worked on [a motion for contempt]." (citations omitted)).

Here, the Court agrees that insufficient information was provided regarding the experience of Kelly Goral, Marla Buitargo-Rincon, and Paul Chukrallah to warrant the requested fees. Accordingly, the Court finds a rate of $80 an hour is appropriate for these individuals. The Court also finds that based on the descriptions for the litigation assistants provided and the experience detailed therein, a rate of $80 an hour is appropriate for Ajoke Adetula, Sylvia Dovlatyan, Kathryn Haas, Christie Marsh, and Sydney Melendez, and a rate of $90 an hour is appropriate for Noel Fahey, Trudy Flood, and Geneva Montgomery.

### b.    Reasonable Hours

Plaintiff's counsel has recorded 499.3 hours of billable time, consisting of 286.2 hours for Attorney Agnew (excluding travel time), (Dkt. No. 146-2; *see also* Dkt. No. 146-1, ¶ 49), 131.1 hours for Attorney Morrison, (Dkt. No. 146-3), and 82.02 hours for support staff, (Dkt. No. 146-4). Plaintiff has requested that the Court award attorneys' fees in an amount equal to fifty percent of the lodestar figure. (Dkt. No. 147, at 18, 19). Defendants argue that a fifty percent reduction is insufficient to account for Plaintiff's limited success, (Dkt. No. 148-13, at 11–12), and that the

requested amount should also be reduced because of "Plaintiff's conduct in forcing Defendants to do unnecessary work"; "the unreliability of the submitted time records"; and "excessive and improper time entries," (*id.* at 9). The Court also considers Defendant's argument that certain hours billed by support staff should be excluded from the fee award. (*See id.* at 18–19).

### i.    Adjustment for Degree of Success

Plaintiff asserts that the fees he seeks exclude the "hours expended solely on unsuccessful claims" and argues that although "the hours of work expended on Plaintiff's unsuccessful ADA claims are so intertwined with the work expended on Plaintiff's successful [Rehabilitation Act] claims they cannot be parsed out," a fifty percent reduction in fees is appropriate to account for the dismissed claims. (Dkt. No. 147, at 17–18). Defendants agree that "[a]ny award of fees should be reduced to account for Plaintiff's unsuccessful claims and limited success," but argue that the proposed reduction "is insufficient to account for the reality of the fact that far more than fifty percent of Plaintiff's counsel's efforts were spent on DOCCS issues completely unrelated to the use of ASL in the Wende mess hall" and that "very little discovery related to Plaintiff's CNYPC hospitalization, and the accommodations that he was given there, was conducted," thus, "only a small fraction, not half, of counsel's fees should be paid, if any." (Dkt. No. 148-13, at 9–12). Plaintiff replies that Defendants "have set forth no persuasive argument to conclude that a 50% reduction is not reasonable and that an additional reduction is warranted," and specifically contests Defendants' characterization of certain depositions as "not beneficial" to Plaintiff's prevailing claims. (Dkt. No. 151, at 10–13).

When a plaintiff succeeds on only some of his claims for relief, the Court considers two factors. First, whether "the plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded." *Hensley*, 461 U.S. at 434. And second, whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee

award." *Id.* The Supreme Court has recognized that in some civil rights cases "the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories." *Id.* at 435. In such cases where "[m]uch of counsel's time [is] devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis . . . the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* Additionally, "[c]ourts in this Circuit have recognized a district court's authority to make across-the-board percentage cuts in hours, as opposed to an item-by-item approach, to arrive at the reasonable hours expended." *United States ex rel. Nichols v. Comput. Scis. Corp.*, 499 F. Supp. 3d 32, 41 (S.D.N.Y. 2020) (quoting *Williams v. Epic Sec. Corp.,* 368 F. Supp. 3d 651, 656–57 (S.D.N.Y. 2019) (Aaron, M.J.)).

Here, there is no dispute that Plaintiff has only succeeded on two of his claims for relief. Claims against six of nine Defendants were dismissed from this suit. Of the remaining ADA and Rehabilitation Act claims that were considered at the summary judgment stage, only two claims against three Defendants survived to proceed to trial. While the Court agrees that the Rehabilitation Act claims on which Plaintiff prevailed were based on the same set of facts and legally intertwined with certain of the unsuccessful ADA claims, *see Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 186-87 (2d Cir. 2015) (explaining that because "the standards for actions under [Title II of the ADA and Section 504 of the Rehabilitation Act] are generally equivalent," courts "analyze such claims together" (citation omitted)), the Court finds that a greater than fifty percent reduction is appropriate to properly account for the degree of success achieved. Upon reviewing Defendants' objections, as well as considering Plaintiff's own efforts to lower his fees, the Court finds an across-the-board seventy-five percent reduction

in the award of attorneys' fees is appropriate. *Cf. West*, 2018 WL 2901330, at *4–6, 2018 U.S. Dist. LEXIS 98495, at *8–13 (reducing fees by eighty-five percent where vast majority of plaintiff's claims were dismissed and where plaintiff only prevailed on one claim for which he was awarded nominal damages).

### ii.    Unnecessary Work

Defendants argue that Plaintiff's fees should be reduced because Plaintiff abandoned certain claims and issues after having "required" Defendants to expend time on them in discovery and at the summary judgment stage. (Dkt. No. 148-13, at 12–13). Plaintiff responds that "[t]here is no support for" this argument. (Dkt. No. 151, at 11).

While Defendants are correct that "[c]ourts have reduced attorneys' fees 'for work done on motions that were never filed, on claims that were abandoned, [and] on motions that were unreasonable or had little chance of success,'" (*see* Dkt. No. 148-13, at 12 (quoting *Murray v. Marshall*, No. 15-cv-599, 2020 WL 5899851, at *6, 2020 U.S. Dist. LEXIS 47219, at *15 (E.D.N.Y. Mar. 16, 2020), *report and recommendation adopted as modified* 2020 WL 3819075, 2020 U.S. Dist. LEXIS 119857 (E.D.N.Y. July 8, 2020))), the Court does not find that the instances Defendants have highlighted necessitate a further reduction here.

### iii.    Unreliable Time Entries

Defendants argue that Attorney Agnew's statements in her declaration indicating that she "reviewed all entries for accuracy, appropriateness to the litigation, errors, any overbilling, or block billing," "remove[d] any redundancies that might have occurred due to clerical error," and "removed any time entries for which [she] did not believe the billing was appropriate," (Dkt. No. 148-13, at 19–20 (quoting Dkt. No. 146-1, ¶¶ 7–9)), "necessarily strips those entries of their contemporaneous nature and brings the reliability of the records into question, (*id.* at 20 (citing *Pandeosingh v. Am. Med. Response, Inc.*, No. 9-cv-5143, 2014 WL 1365435, at *2, 2014 U.S.

Dist. LEXIS 47968, *5 (E.D.N.Y. Apr. 7, 2014))). Plaintiff does not explicitly address this argument, other than its general argument that Defendants have not shown any "additional reduction [in fees] is warranted." (Dkt. No. 151, at 10–11).

Second Circuit precedent "requires that all applications for attorney's fees be supported by contemporaneous records." *Scott v. City of N.Y.*, 626 F.3d 130, 132 (2d Cir. 2010). The practices of Attorney Agnew's firm meet this standard. (*See* Dkt. No. 146-1, ¶ 5 ("Our staff inputs their time into our Clio system on a contemporaneous basis.")). Defendants' reliance on *Pandeosingh v. Am. Med. Response, Inc.* for the proposition that Attorney Agnew's discussion of what she did to review the time sheets in this case is improper is inapposite. In that case, the behavior that "raise[d] serious questions" was plaintiff's counsel's annotations to time sheets "reflect[ing] the reasonable amount of time devoted to the motions" where there were block-billed entries. *Pandeosingh*, 2014 WL 1365435, at *2, 2014 U.S. Dist. LEXIS 47968, at *5. This is not comparable to the reasonable efforts to review the billing entries that Attorney Agnew has described, and the Court will not reduce the fee award on this basis.

### iv.    Excessive and Improper Time Entries

Defendants seek a reduction in attorneys' fees for several additional reasons relating to the billing records, including for "many instances of mixed billing," and otherwise for "vague entries lacking sufficient detail," "duplication/overstaffing," and time spent on "unnecessary tasks." (Dkt. No. 148-13, at 20–22). Plaintiffs have asserted that "the time entries comport with the standards of the Second Circuit." (Dkt. No. 147, at 19–20).

"Block billing . . . the practice of lumping multiple distinct tasks into a single billing entry . . . is generally disfavored because it can complicate the district court's task of determining the reasonableness of the billed hours." *Raja v. Burns*, 43 F.4th 80, 87 (2d Cir. 2022) (citing *Restivo v. Hessemann*, 846 F.3d 547, 591 (2d Cir. 2017)). "But the practice is by no means

prohibited in this Circuit because block billing will not always result in inadequate documentation of an attorney's hours. [The Second Circuit] ha[s] found block billing to be permissible as long as the district court is still able 'to conduct a meaningful review of the hours' for which counsel seeks reimbursement." *Id.* (quoting *Restivo*, 846 F.3d at 591). Here, while Defendants correctly note that Plaintiff's time entries contain instances of block billing, (Dkt. No. 148-13, at 21), the block billing is not to such a degree that the Court cannot conduct a meaningful review of the hours. The Court will not reduce Plaintiff's fees on this basis.

As for the remaining entries to which Defendants object, the Court agrees with Plaintiff that any "anomalies" must be "contextualize[d] within the total billing and activity history of the case." (Dkt. No. 147, at 19 (citation omitted)). "[T]he essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." *Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 547 (2d Cir. 2023) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). After carefully reviewing the billing records, the Court does not find the presence of some deficient entries to require a reduction further than what has already been applied.

### v.    Clerical Work

Defendants have additionally objected that much of the work conducted by the Firm's support staff consisted of clerical work. (*See* Dkt. No. 148-13, at 18–19). Plaintiff states that he "only seeks fees for administrative tasks conducted by staff for this case." (Dkt. No. 151, at 14).

"While courts generally hold that 'clerical and secretarial services are part of overhead and are not generally charged to clients', tasks that are more akin to paralegal work will be permitted." *Dotson v. City of Syracuse*, No. 4-cv-1388, 2011 WL 817499, at *26, 2011 U.S. Dist. LEXIS 20374, at *72–73 (N.D.N.Y. Mar. 2, 2011) (citation omitted). "Clerical tasks such as organizing case files and preparing documents for mailing are not compensable. However, paralegal tasks such as the selection and redaction of trial exhibits and preparation of trial

19

exhibits and witness binders are compensable." *Id.*, 2011 WL 817499, at *26, 2011 U.S. Dist. LEXIS 20374, at *73 (citing *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 541 (S.D.N.Y. 2008)).

The Court agrees that some of the time entries billed by support staff contain descriptions of tasks that are more properly categorized as clerical work rather than paralegal work. (*See, e.g.*, Dkt. No. 146-4, at 2 (billing time in part for "[s]can[ning] Matagrano files"), at 4 (billing time for "confirmation of hotel and board room")). However, the Court finds that such entries are not so prevalent to warrant a reduction further than the seventy-five percent reduction already imposed.

### B.    Costs

Plaintiff argues that the Rule 68 Offer "allows Plaintiff the costs of suit," (Dkt. No. 147, at 20; *see also* Dkt. No. 151, at 15–16), and that costs are otherwise recoverable under 29 U.S.C. § 794a(b), (Dkt. No. 147, at 11). Defendants do not directly address the availability of costs under the Rule 68 offer or 29 U.S.C. § 794a(b), but instead addresses the availability of costs under Rule 54(d)(1) of the Federal Rules of Civil Procedure. (Dkt. No. 148-13, at 22–23). Defendants object to Plaintiff's request for costs on the basis that such an award would be inequitable or unfair because "Defendants prevailed on almost all of Plaintiff's claims, and succeeded in preventing Plaintiff from obtaining the only damages sought," and argue that the request "should be denied in its entirety" or, "alternative[ly], any award of costs should be commensurate with Plaintiff's slight level of success." (Dkt. No. 148-13, at 22–23).

For the same reasons as previously discussed, the Court does not interpret the Rule 68 Offer to guarantee the provisions of costs, but instead that the offer explicitly excluded such costs from the judgment. *See supra* Part II.A.1.a. However, costs are also available to Plaintiff as

a prevailing party under 29 U.S.C. § 794a(b).[11] *See Grievson v. Rochester Psychiatric Ctr.*, 746 F. Supp. 2d 454, 460 (W.D.N.Y. 2010) (explaining that the provision "permit[s] a discretionary award of attorneys' fees and costs" (citing 29 U.S.C. § 794a(b)). While Defendants argue that Plaintiff's low level of success does not entitle him to costs, these circumstances are not comparable to those in the case on which Defendants rely, *AXA Versicherung AG v. N.H. Ins. Co.*, 769 F. Supp. 2d 623 (S.D.N.Y. 2011). (Dkt. No. 148-13, at 22–23). There, the defendants ultimately prevailed on appeal to overturn an over $35 million jury verdict (consisting of both compensatory and punitive damages) on a statute of limitations defense and the court chose not to award the defendants costs. *Id.* at 625–26. In this instance, Plaintiff did not win on a "technical legal defense," (*see* Dkt. No. 148-13, at 23), but rather because Defendants agreed to accept judgment against them.

Here, Plaintiff has sought a total of $12,025.66 in costs for the following expense categories: deposition expenses, mailings, medical records, service of process, and travel expenses. (Dkt. No. 147, at 20–21; *see also* Dkt. No. 146-1, ¶ 52). Attorney Agnew's declaration states that she has excluded from the expenses those "related to dismissed defendants and related to the deposition of Cathy Sheehan which was canceled by Plaintiff's counsel" and that "[c]harges related to the depositions of Margaret Stirk and Stewart Eckert were halved as the depositions also covered information related to" another case. (Dkt. No. 146-1, ¶¶ 46–47). Defendant does not specifically argue that any of the expenditures were unreasonable. The Court has reviewed the expenses and has not found them to be excessive or inappropriate. "However, the court will reduce the costs by the same percentage as the fee award to reflect plaintiff's

---

[11] Costs would also be available to Plaintiff under Rule 54(d)(1), *see Diamond*, 2010 WL 9459022, at *4, 2010 U.S. Dist. LEXIS 144731, at *10–11 (awarding costs pursuant to Rule 54(d) after finding that defendant "offered no additional support for his contention that costs should not be allowed to a plaintiff who obtains nominal damages"), but as Plaintiff does not assert costs on this basis the Court does not address the issue further.

limited success." *Dotson*, 2011 WL 817499, at *33, 2011 U.S. Dist. LEXIS 20374, at *92

(N.D.N.Y. Mar. 2, 2011) (citation omitted).

C.    **Final Calculation**

In sum, after carefully considering all the relevant factors and adjusting the requested

rates and the requested hours as discussed above, the Court finds Plaintiff is entitled to attorneys'

fees and costs in the total amount of $34,317.06, as itemized below:

**Table 1:   Attorneys' Fees and Costs**

| Attorney/Support Staff Member | Adjusted Rate | Hours | Total Fees |
|---|---|---|---|
| Amy Jane Agnew (Principal) | $300.00 | 286.2 | $85,860 |
| Joshua Morrison (Litigation Counsel) | $250.00 | 131.1 | $32,775.00 |
| Kelly Goral (Undergraduate Clerk) | $80.00 | 3.7 | $296.00 |
| Marla Buitargo-Rincon (Law Student Clerk) | $80.00 | 6.5 | $520.00 |
| Paul Chukrallah (Law Student Clerk) | $80.00 | 40 | $3,200.00 |
| Ajoke Adetula (Litigation Assistant) | $80.00 | 0.62 | $49.60 |
| Sylvia Dovlatyan (Litigation Assistant) | $80.00 | 7 | $560.00 |
| Kathryn Haas (Litigation Assistant) | $80.00 | 9.3 | $744.00 |
| Christie Marsh (Litigation Assistant) | $80.00 | 9.5 | $760.00 |
| Sydney Melendez (Litigation Assistant) | $80.00 | 0.8 | $64.00 |
| Noel Fahey (Litigation Assistant) | $90.00 | 1.3 | $117.00 |
| Trudy Flood (Litigation Assistant | $90.00 | 1.7 | $153.00 |
| Geneva Montgomery (Litigation Assistant) | $90.00 | 1.6 | $144.00 |
| **Costs** | — | — | $12,025.66 |
| **Subtotal** | — | — | $137,268.26 |
| **Reduction** | — | — | 75% |
| **Final Award** | — | — | $34,317.06 |

III.    **CONCLUSION**

For these reasons, it is hereby

**ORDERED** that Plaintiff's motion for attorneys' fees and costs, (Dkt. No. 146), is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that Plaintiff is awarded $34,317.06 in attorneys' fees and costs.

**IT IS SO ORDERED.**

Dated: <u>November 1, 2024</u>
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge